DECISION
{¶ 1} Relator, John F. Gobich, has filed an original action challenging an interlocutory order in which respondent, Industrial Commission of Ohio ("commission"), ordered a hearing upon a request for reconsideration. Relator sought with this court a writ ordering the commission to vacate its interlocutory order setting the hearing and the final order that followed the hearing.
 {¶ 2} The matter was referred to a magistrate of this court pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court issue a "limited writ," returning this matter to the commission to vacate its orders of July 2002 and November 2002, and to issue a new order, either granting or denying the request by the Bureau of Workers' Compensation ("bureau") for reconsideration. (Attached as Appendix A.)
 {¶ 3} Relator has filed objections to the magistrate's decision, arguing that the issuance of a limited writ is in violation of applicable case law, and that the commission does not have jurisdiction in this case to review the order of a staff hearing officer ("SHO") regarding the issue of permanent and total disability ("PTD") compensation.
 {¶ 4} By way of background, relator sustained an industrial injury in 1981, and a claim was allowed for back conditions. In 1991, a second claim was allowed for injuries to relator's arm and shoulder. In 1996, relator filed an application for PTD compensation. A hearing was conducted in January 1998, and an SHO issued an order awarding PTD compensation from July 3, 1996, "and to continue without suspension unless future facts or circumstances should warrant the stopping of the award."
 {¶ 5} The bureau subsequently received information that relator had been working during the time he had been declared permanently and totally disabled. Following an investigation, the bureau determined that, relator had worked for Caudill Construction, Inc. ("Caudill Construction") after the time relator submitted his PTD application, and that he continued to work after PTD was awarded. As a result of the investigation, the bureau submitted a motion requesting the commission to terminate PTD compensation and Disabled Workers Relief Fund benefits, to declare fraud, and to order the collection of overpaid benefits. The evidence submitted by the bureau in support of its motion included copies of checks from Caudill Construction to relator.
 {¶ 6} On April 22, 2002, the matter was heard by an SHO, who issued a decision finding that relator "was gainfully employed for periods of time subsequently to filing his application for permanent total disability compensation but prior to receiving the order granting his application." The SHO found that relator was overpaid PTD compensation "to the extent that he earned wages for employment, in the amount of $1,815." With the exception of the overpayment cited above, the SHO otherwise denied the bureau's motion.
 {¶ 7} The bureau filed an application for reconsideration on the issues of termination of benefits, overpayment of PTD compensation and fraud. In the accompanying memorandum in support, the bureau argued that the SHO erred in finding that relator was not receiving benefits while working, that the SHO failed to give any dates regarding the issue of overpayment, and that the SHO erred in failing to find fraud despite evidence that relator denied working while going through the PTD application process. Counsel for relator filed a response to the bureau's application, arguing that, while relator worked brief periods of time in 1996 and 1997 for Caudill Construction, "[a]t no time after receiving notice of this decision has claimant again performed any paid work of any kind."
 {¶ 8} The commission issued an "interlocutory order," mailed July 3, 2002, stating in relevant part:
It is the finding of the Industrial Commission that the Administrator has presented evidence of sufficient probative value to warrant adjudication of the request for reconsideration regarding the alleged presence of a clear mistake of law of such character that remedial action would clearly follow.
Specifically, it is alleged that the injured worker was working and receiving pay for periods when he had been declared to be permanently and totally disabled.
Based on these findings, the Industrial Commission directs that the Administrator's request for reconsideration filed 05/23/2002 is to be set for hearing to determine if the alleged clear mistake of law as noted herein is sufficient for the Industrial Commission to invoke its continuing jurisdiction.
 {¶ 9} On October 9, 2002, the commission held a hearing on the application for reconsideration. A majority of the commission found that the order of the SHO "is based on clear mistakes of law of such character that * * * the exercise of continuing jurisdiction is appropriate in this case." Specifically, the commission found that, in "granting the injured worker's application for permanent total disability, the Staff Hearing Officer failed to consider the fact that the injured worker was working immediately prior to, and after, the hearing on 01/22/1998."
 {¶ 10} The commission determined that relator "was engaged in remunerative work activity immediately prior to and subsequent to the adjudication of his application for permanent total disability compensation, based on the evidence obtained by and filed with the Administrator's motion." The commission also found that relator had a duty to disclose, to both the commission and the examining physicians, that he was engaged in work activity, and that the failure to do so constituted fraudulent activity. Based upon the findings rendered, the commission granted the bureau's motion, ordered that relator's PTD compensation be terminated as of October 9, 2002, and made a finding that all prior and subsequent PTD compensation, paid to relator since August 26, 1996, be declared an overpayment.
 {¶ 11} In general, the lifetime nature of a PTD award "does not * * * mean that the award is completely immune from later review." State exrel. Smothers v. Mimh (1994), 69 Ohio St.3d 566, 567. Rather, if the commission learns the claimant is "working or engaging in activity inconsistent with his permanent total disability status, the commission can use its continuing jurisdiction under R.C. 4123.52 to reopen the matter." Id. at 567-568. This court has previously noted that "[c]ontinuing jurisdiction is not unlimited and can only be exercised if there is evidence of: (1) new and changed circumstances; (2) fraud; (3) clear mistake of fact; (4) clear mistake of law; or (5) error by inferior tribunal." State ex rel. Sitterly v. Indus. Comm., Franklin App. No. 01AP-954, 2002-Ohio-3281, at ¶ 9.
 {¶ 12} In the present case, the magistrate, while finding that "the import of the commission's interlocutory order is adequately clear as to the issue for adjudication at the hearing," nevertheless concluded that such order "does not explain the commission's reasoning sufficiently to permit judicial review." In support, the magistrate cited State ex rel.Foster v. Indus. Comm. (1999), 85 Ohio St.3d 320, and State ex rel. Royalv. Indus. Comm. (2002), 95 Ohio St.3d 97. In Foster, the Supreme Court held that the commission could not exercise continuing jurisdiction where it found error but failed to identify such error. The court in Foster
relied in part upon its prior decision in State ex rel. Nicholls v.Indus. Comm. (1998), 81 Ohio St.3d 454, 459, in which the court held that "the mere possibility of unspecified error cannot sustain the invocation of continuing jurisdiction." In Royal, the Supreme Court held that the commission's declaration of the "possibility of an error" did not provide the claimant with sufficient notice of the alleged error, and, thus, precluded the commission from exercising its continuing jurisdiction by granting reconsideration.
 {¶ 13} Upon review, however, we find the orders in Foster, Royal
and Nicholls to be distinguishable from the order at issue in this case. This court has previously found Nichols and Foster to be inapplicable where the commission has identified a specific error in the SHO's order and has referenced evidence to support its determination that error existed. State ex rel. Sitterly, supra, at ¶ 11. In the present case, the commission, in the interlocutory order setting a hearing on the request for reconsideration, noted evidence regarding a clear mistake of law, in that "the injured worker was working and receiving pay for periods when he had been declared to be permanently and totally disabled," i.e., the SHO failed to consider evidence that relator was engaged in work activity before and after the award of PTD compensation in January 1998. Upon review, we find that the order at issue was sufficient to explain the basis for the exercise of continuing jurisdiction, and we thus disagree with the magistrate's determination that the commission did not provide a meaningful explanation of the nature of the error at issue on reconsideration.
 {¶ 14} We further note that the record does not suggest the interlocutory order was insufficient to allow the claimant "an opportunity to prepare a defense in advance." Royal, supra, at 100. Specifically, in relator's response in opposition to the bureau's application for reconsideration, relator, while acknowledging he was paid on three occasions in 1996, and three more occasions in 1997 for work performed at Caudill Construction, denied having worked after the award of PTD compensation in January 1998. Additionally, relator addressed the bureau's allegation that he had engaged in fraud because he failed to inform his physician he was engaged in work during the PTD examination process (prior to being declared permanently and totally disabled). Thus, the record shows that relator was adequately apprised of the issues for reconsideration considered by the commission at the subsequent hearing.
 {¶ 15} Accordingly, relator's objection that the commission lacked jurisdiction to review the order of the SHO is overruled; further, relator's objection that the magistrate's recommendation of a limited writ violates applicable law is overruled as moot. Based upon a review of relator's objections and an independent review of the record, this court adopts the magistrate's findings of fact but rejects the magistrate's conclusions of law. Therefore, relator's objections are overruled, and the requested writ of mandamus is denied.
Objections overruled; writ of mandamus denied.
Bowman and Watson, JJ., concur.
 IN MANDAMUS {¶ 16} In this original action, relator, John F. Gobich, challenges an interlocutory order in which respondent Industrial Commission of Ohio ("commission") ordered a hearing upon a request for reconsideration. Relator asks the court to issue a writ of mandamus compelling the commission to vacate its interlocutory order setting the hearing as well as the final order that followed the hearing.
 Findings of Fact {¶ 17} 1. In 1981, John F. Gobich ("claimant") sustained an industrial injury, and his workers' compensation claim was allowed for back conditions. In 1991, a second claim was allowed for conditions of the right arm and shoulder.
 {¶ 18} 2. In 1996, claimant filed an application for permanent total disability ("PTD") compensation. His treating chiropractor, Jeffrey Elwert, D.C., reported in July 1996 that claimant was unable to engage in sustained remunerative employment. Dr. Wayne C. Amendt, an orthopedic specialist for the commission, found that claimant was capable of sedentary work.
 {¶ 19} 3. In January 1998, a hearing was held before a staff hearing officer, who noted that claimant was 64 years old, had a 12th grade education, and had worked as a sheet metal worker. A vocational report of May 1997 indicated that the work history may reflect limited ability to adapt to other work. The commission concluded that, given claimant's age and medical restrictions, he was unable to engage in sustained remunerative employment as of July 3, 1996. The commission awarded PTD compensa-tion dating back to July 3, 1996, and to continue unless future circumstances should warrant the stopping of the award.
 {¶ 20} 4. The Ohio Bureau of Workers' Compensation ("bureau") received information that claimant had been working during the time he was declared to be permanently and totally disabled. On investigation, the bureau confirmed that claimant had earned wages during the period that his doctor had reported he was unable to perform sustained remunerative employment and during the period for which he received PTD compensation.
 {¶ 21} 5. In February 2002, the bureau filed a motion asking the commission to terminate PTD compensation and Disabled Workers Relief Fund benefits, to declare fraud, and to order collection of overpaid benefits. In support, the bureau submitted a variety of evidence including tax documents for 1996 and 1997 showing that claimant worked for Caudill Construction, Inc. The bureau submitted copies of checks made payable to claimant from Caudill Construction in 1997 and 1999. Other documents indicated that claimant worked for periods in 1998 and 1999, performing tasks such as "interior trim labor."
 {¶ 22} 6. In April 2002, a hearing was held before a staff hearing officer, who denied the motion except for declaring an overpayment in the amount of the wages that claimant had earned from Caudill Construction. The hearing officer concluded that claimant was gainfully employed for periods of time "subsequent to filing his application" for PTD compensation "but prior to receiving the order granting his application."
 {¶ 23} 7. The bureau filed a request for reconsideration, including the following arguments:
 {¶ 24} "* * * The SHO used the wrong legal standards: 1) The SHO found that the claimant was not receiving benefits simultaneously while working, however, the claimant did received [sic] them retrospectively; that is[,] the claimant was granted PTD on 09/18/1999 with a start date of 07/03/1996 and the claimant had worked during this period of time. 2) The SHO held that the claimant was not eligible to receive PTD over the periods of time that the [sic] worked for wages and finds an overpayment but does not give any dates for the overpayment. 3) The claimant repededly [sic] denied working while going through the PTD process to the IC and examining doctors, but the SHO does no intent to commit fraud [sic].
 {¶ 25} "The Administrator filed a motion requesting that the claimant be declared overpaid PTD because the claimant was working over a period of time that he was awarded PTD. The orders in claims PEL232408 and PEL5302 in which the claimant had been previously been [sic] granted a split PTD. PTD was granted on 09/18/1999 with a start date of 07/03/1996 based on an IC 2 filed 09/10/1996. Of particular note is that the evidence shows that the claimant had worked at various times between the filing of the PTD application and the granting of the PTD without reporting that fact to the IC, BWC or the examining doctors.
 {¶ 26} "FACTS
 {¶ 27} "Some significant facts which support a reconsideration of this claim:
 {¶ 28} "• The PTD application was filed 09/10/96.
 {¶ 29} "• The claimant was paid for 8 hours of construction work done on 08/26/1996 [Ex. 9 and Ex 6 check # 647]
 {¶ 30} "• The claimant received a check from Caudill Construction Inc. for $653.94 on 09/17/1996. Ex. 6 check # 695]
 {¶ 31} "• Dr. Amendt examined for the IC on the question of PTD on 03/05/1997. The claimant gave a history of having last worked `March of 1995' [Ex. 11]
 {¶ 32} "• The claimant was paid $420.00 for 28 hours of construction worked a week in February 1997 [Ex. 9 and Ex 6 check #801]
 {¶ 33} "• W-2 for this claimant from Caudill Construction Inc. for 1996 and 1997.
 {¶ 34} "• PTD hearing was held 01/22/1998 with the claimant present. [Ex. 10]
 {¶ 35} "• The claimant worked 15 hours (3 five hour days) doing construction for Caudill Construction Inc. in November 1997. [Ex 9]
 {¶ 36} "• The claimant receive[d] a check f[ro]m Caudill Construction, Inc. for $206.24 dated 12/10/97. [Ex. 6 check # 0902]
 {¶ 37} "• The order granting PTD was mailed out 02/04/1998 granted PTD beginning 07/03/1996. [Ex 10]
 {¶ 38} "• The claimant was paid for 4 hours for Inspection Corr for a billing period Jan. 10/98 through Jan 30/98 from Caudill Construction. * * *
 {¶ 39} "• The claimant was paid for 17 hours of Interior Trim Labor for a billing period of Feb 1/98 through Mar 7/98 from Caudill Construction. [Ex. 5]
 {¶ 40} "• The claimant returned an `Are You Working' letter to BWC with his signature dated 02/03/2000; in it the claimant circled `NO' in answer to `Are you currently working or have you worked since you were granted PTD benefits?' question. [Ex 13]
 {¶ 41} "* * *
 {¶ 42} "Because of the clear errors of a subordinate hearing officer, it is requested that the Industrial Commission reconsider the BWC motion to terminate PTD, to declare the Claimant overpaid PTD and to find fraud."
 {¶ 43} 8. Claimant filed a memorandum in opposition to reconsideration. He argued inter alia that he was not receiving disability compensation at the time he was performing the work at Caudill Construction. He emphasized that he received the decision awarding PTD in February 1998, and that, "At no time after receiving notice of this decision had claimant again performed any paid work of any kind and there was no evidence presented at the hearing to the contrary."
 {¶ 44} 9. In an interlocutory order mailed July 3, 2002, the commission set the matter for hearing:
 {¶ 45} "It is the finding of the Industrial Commission that the Administrator has presented evidence of sufficient probative value to warrant adjudication of the request for reconsideration regarding the alleged presence of a clear mistake of law of such character that remedial action would clearly follow.
 {¶ 46} "Specifically, it is alleged that the injured worker was working and receiving pay for periods when he had been declared to be permanently and totally disabled.
 {¶ 47} "Based on these findings, the Industrial Commission directs that the Administrator's request for reconsideration filed 05/23/2002 is to be set for hearing to determine if the alleged clear mistake of law as noted herein is sufficient for the Industrial Commission to invoke its continuing jurisdiction.
 {¶ 48} "In the interests of administrative economy and for the convenience of the parties, after the hearing on the question of continuing jurisdiction, the Industrial Commission will take the matter under advisement and proceed to hear the merits of the underlying issue. The Industrial Commission will thereafter issue an order on the matter of continuing jurisdiction under Ohio Revised Code 4123.52. If authority to invoke continuing jurisdiction is found, the Industrial Commission will address the merits of the underlying issue."
 {¶ 49} 10. In October 2002, the commission held a hearing on the request for reconsideration. A majority of the commission reached the conclusion that the SHO order of April 2002 was based on clear mistakes of law. As set forth in a decision mailed in November 2002, the commission invoked its continuing jurisdiction and granted the bureau's motion as follows:
 {¶ 50} "10/09/2002 — It is the decision of the Industrial Commission that the Administrator's request for reconsideration, filed 05/23/2002, is taken under advisement for further review and discussion and that an order be published without further hearing.
 {¶ 51} "10/09/2002 — After further review and discussion, it is the order of the Industrial Commission that the order of the Staff Hearing Officer, dated 04/22/2002, is vacated and that the Administrator's motion, filed 02/24/2002, is granted.
 {¶ 52} "It is the finding of the Industrial Commission that the order of the Staff Hearing Officer is based on clear mistakes of law of such character that remedial action would clearly follow; therefore, the exercise of continuing jurisdiction is appropriate in this case. In granting the injured worker's application for permanent total disability, the Staff Hearing Officer failed to consider the fact that the injured worker was working immediately prior to, and after, the hearing on 01/22/1998.
 {¶ 53} "On 09/10/1996, the injured worker filed an application for permanent total disability compensation. The application contained a statement of the injured worker's prior work history, which indicated that he last worked in 1995 as a sheet metal worker and a volunteer fireman. A Staff Hearing Officer granted the application in an order dated 01/22/1998, issued 02/04/1998. The order cited the injured worker's work history as a sheet metal worker and volunteer fireman, and awarded permanent total disability compensation commencing 07/03/1996.
 {¶ 54} "On 02/24/2002, the Administrator filed a motion requesting that the award of permanent total disability compensation be terminated, that an overpayment of such compensation and DWRF benefits be declared from the inception of the award to the present, and that a finding of fraud be made by the Industrial Commission. On 04/22/2002, a Staff Hearing Officer denied the Administrator's motion. The Staff Hearing Officer found the injured worker had been working `odd jobs' for his friend, Charles Caudill, during 1996 and 1997, but that such work did not demonstrate an ability to perform sustained remunerative employment that would disqualify the injured worker from receiving permanent total disability compensation. The Staff Hearing Officer, however, ordered that any wages earned by the injured worker during 1996 and 1997, after the commencement of the permanent total disability compensation, be found to be an overpayment in the claim.
 {¶ 55} "In support of its motion, the Administrator submitted evidence obtained from an investigation of the injured worker's work activities since 1996. The evidence includes W-2 forms from 1996 and 1997 from Caudill Construction; copies of checks made out to the injured worker from Caudill Construction from 1996, 1997, and 1999; and other correspondence demonstrating work that the injured worker performed for Caudill Construction during February and March of 1998 (Attachment 5), and during March and April 1999 (Attachment 8), after the adjudication of his application for permanent total disability compensation.
 {¶ 56} "It is the finding of the Industrial Commission that the injured worker was engaged in remunerative work activity immediately prior to and subsequent to the adjudication of his application for permanent total disability compensation, based on the evidence obtained by and filed with the Administrator's motion.
 {¶ 57} "Furthermore, the Commission finds that the injured worker had a duty to disclose that he was engaged in work activity to the Industrial Commission and to the physicians examining the injured worker with regard to the permanent total disability application. The Commission further finds that at the time that the application was being processed and adjudicated by the Commission, the injured worker failed to disclose such information. Therefore, the Commission finds the injured worker was engaged in fraudulent activity by failing to disclose such work activity at the time that his permanent total disability application was being considered. The injured worker's failure to disclose was material to the issue pending before the Industrial Commission. That failure to disclose was made with the knowledge of the falsity of the information actually given regarding his work history with the intent to mislead the Industrial Commission into relying on it. The Commission additionally finds that the Bureau of Workers' Compensation and Industrial Commission have suffered an injury as a result by granting the injured worker's application, and paying permanent total disability compensation to him since 08/26/1996.
 {¶ 58} "Accordingly, the Industrial Commission grants the Administrator's motion, orders that the injured worker's permanent total disability compensation be terminated as of 10/09/2002, the date of this hearing, and finds that all prior and subsequent permanent total disability compensation paid to the injured worker since 08/26/1996, including DWRF benefits, be declared an overpayment, to be recouped pursuant to the fraud provisions of R.C. 4123.511(J)."
 Conclusions of Law {¶ 59} Claimant challenges the interlocutory order of July 3, 2002, contending that the commission did not fulfill its duty to provide a meaningful explanation of its reason for setting a hearing to determine whether to exercise its continuing jurisdiction.
 {¶ 60} Under R.C. 4123.52, the commission may invoke its continuing jurisdiction to alter a prior order if it finds that the prior order was based on a clear error of law or fact, based on fraud, or that new and changed circumstances have arisen since the prior order was entered. See, generally, State ex rel. B C Machine Co. v. Indus. Comm.
(1992), 65 Ohio St.3d 538.
 {¶ 61} The Ohio Supreme Court has held that an order granting reconsideration, that is, an order granting a new hearing on the merits, is an abuse of discretion when the order is based on the mere "possibility" of unspecified error. State ex rel. Nicholls v. Indus.Comm. (1998), 81 Ohio St.3d 454; State ex rel. Chaffins v. Indus. Comm.
(1998) 82 Ohio St.3d 268. Likewise, the commission abuses its discretion when it authorizes a new hearing on the merits upon a finding of "clear error" but fails to identify the error. State ex rel. Foster v. Indus.Comm. (1999), 85 Ohio St.3d 320. In Foster, the commission granted a new hearing on the merits because the application for reconsideration "presented probative evidence of a clear mistake of fact and of law in the order from which reconsideration is sought." Id. at 321. The Supreme Court explained that the commission, in an order granting reconsideration of the merits, must "identify the error" and "reveal, in a meaningful way, why [continuing jurisdiction] was exercised." Id. at 322.
 {¶ 62} In State ex rel. Royal v. Indus. Comm., 95 Ohio St.3d 97,2002-Ohio-1935, the court again reviewed an interlocutory order of the commission that scheduled a reconsideration hearing based on the mere "possibility of an error" in the commission's prior order. The procedural posture was different, however, in that the employer had made a second request for reconsideration after the first request for reconsideration was denied.
 {¶ 63} In the present action, the commission issued an interlocutory order in July 2002 stating that it would hold a hearing to consider whether to invoke its continuing jurisdiction to modify an order. It identified which of the grounds for continuing jurisdiction under R.C. 4123.52 was at issue, stating that the hearing would be held to determine whether the "alleged clear mistake of law" was sufficient for the commission to invoke its continuing jurisdiction, thus identifying. The commission explained as follows: "Specifically, it is alleged that the injured worker was working and receiving pay for periods when he had been declared to be permanently and totally disabled." The question in mandamus is whether this language identified the error and adequately explained why a hearing was being held to consider an exercise of continuing jurisdiction.
 {¶ 64} In this case, when one reviews the entire record — the evidence, the order denying termination of PTD, the bureau's motion for reconsideration, and claimant's memorandum in opposition — the import of the commission's interlocutory order is adequately clear as to the issue for adjudication at the hearing, given the context. However, under Foster, it is not sufficient if the issue on reconsideration is reasonably clear in the context of all the evidence, prior orders, memoranda, etc. Under Foster, the commission must set forth — in the order referring the matter for hearing — not only the alleged error, but also a "meaningful" explanation of the reason for holding the hearing. In essence, the principles of State ex rel. Noll v. Indus.Comm. (1991), 57 Ohio St.3d 203, apply to an order in which the commission grants a hearing on reconsideration.
 {¶ 65} Here, in the interlocutory order of July 2002, the commission did not sufficiently delineate the alleged error by its staff hearing officer. The commission stated only that there was an allegation that the claimant was working for pay during a period when he was declared to be permanently and totally disabled. That statement, however, simply reiterated the central contention of the bureau's initial motion to terminate PTD. Thus, the commission's explanation merely restated an argument already made by the bureau at the outset. Accordingly, the magistrate concludes that the commission did not provide a meaningful explanation of the nature of the hearing officer's error at issue on reconsideration. Therefore, the commission must vacate its order of July 2002 and issue a new order ruling on the bureau's request for reconsideration. The present order does not explain the commission's reasoning sufficiently to permit judicial review.
 {¶ 66} The magistrate rejects claimant's argument that he is entitled to a "full" writ. The magistrate finds that claimant has established only that a limited "Noll writ" is warranted. Although the commission failed to provide an adequate explanation, the magistrate is not convinced that it cannot do so, as a matter of law.
 {¶ 67} When a commission order fails to provide an adequate explanation, the court typically returns the matter to the commission to vacate the deficient order and issue a new one providing an adequate explanation of its reasoning unless the relator meets the burden of proving that the commission had a clear legal duty to grant or deny the application. See, e.g., State ex rel. LeVan v. Young's Shell Serv.
(1997), 80 Ohio St.3d 55. Where the relator establishes that it would be pointless to return a matter to the commission for further consideration because the commission has no discretion and must issue a particular decision as a matter of legal duty, the court may grant a full writ.
 {¶ 68} In the present action, the magistrate concludes that, although the deficient order must be vacated, the appropriate course is for the commission to address the bureau's motion again and to issue a new order, granting or denying a hearing on reconsideration and, if a hearing is granted, providing a meaningful explanation of the grounds on which the hearing will be held. This case is not like in Royal, supra, in which the court found that the party seeking reconsideration had presented no error that could warrant an exercise of continuing jurisdiction. Here, claimant has not proved that there are no grounds on which the commission could properly exercise its continuing jurisdiction as a matter of law.
 {¶ 69} Accordingly, the magistrate recommends that the court issue a limited writ of mandamus, returning this matter to the commission to vacate its orders of July 2002 and November 2002 and to issue a new order, granting or denying the bureau's request for reconsideration in compliance with the above-cited authorities.
P.A. Davidson, Magistrate.